UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JERIEL ALEXANDER

                          Plaintiff,                    **OPINION AND ORDER**

        -against-                       22-cv-9557 (AEK)

THE STOP AND SHOP SUPERMARKET
COMPANY, LLC,

                          Defendant.
------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

       Plaintiff Jeriel Alexander, proceeding *pro se*, brings this action against Defendant The Stop and Shop Supermarket Company, LLC ("Stop & Shop"), asserting claims for racial discrimination pursuant to 42 U.S.C. § 1981; the New York Human Rights Law ("NYHRL"), New York Exec. Law § 296 *et seq.*; the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8-101 *et seq.*; and New York Civil Rights Law § 40. *See* ECF No. 37 ("Amended Complaint" or "Am. Compl."). Currently before the Court are Stop & Shop's motion for summary judgment, ECF No. 74, and Plaintiff's cross-motion for summary judgment, ECF No. 83. For the reasons that follow, Stop & Shop's motion is GRANTED IN PART AND DENIED IN PART, and Plaintiff's cross-motion is DENIED.

---

[1] The parties consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) on January 20, 2023. ECF No. 14.

# BACKGROUND

## I.    Factual Background

Since only a small number of facts appear to be undisputed, the following facts relevant to the Court's decision are taken primarily from the evidence submitted in support of Stop & Shop's motion and Plaintiff's cross-motion,[2] rather than the parties' Local Civil Rule 56.1 Statements and Counter-statements.[3]  *See* Stop & Shop's Local Civil Rule 56.1 Statement, ECF No. 75; Plaintiff's Response to Stop & Shop's Local Civil Rule 56.1 Statement, ECF No. 89 ("Pl.'s Counter 56.1"); Plaintiff's Local Civil Rule 56.1 Statement, ECF No. 85; Stop & Shop's Response to Plaintiff's Local Civil Rule 56.1 Statement, ECF No. 99 ("Def.'s Response 56.1"); and Plaintiff's Rebuttal Local Civil Rule 56.1 Statements, ECF Nos. 105 & 107.[4]

Plaintiff is a black male.  ECF No. 77 ("Shafeek Decl.") Ex. G ("Pl. 7/25 Dep.") at 19:25-20:7, 92:7-9.  On August 7, 2020 around 9:30 p.m., Plaintiff was at the Stop & Shop store at 154 Westchester Avenue in White Plains, New York with his sister, Sapphira Alexander ("Sapphira"), and mother, Glyda Alexander ("Glyda").  Pl.'s Counter 56.1 ¶¶ 57-58, 60; Pl. 7/25 Dep. at 6:16-7:22; Shafeek Decl. Ex. R ("Pl. 10/23 Dep.") at 16:11-20; Shafeek Decl. Ex. F ("Glyda 5/16 Dep.") at 22:9-17; *see also* ECF Nos. 70-71.  After shopping for groceries, Plaintiff

---

[2] In addition to the parties' exhibits, which include excerpts from the depositions taken of Plaintiff, his mother, and his sister, Plaintiff has filed several declarations from his mother and his sister in support of his cross-motion.  *See* ECF Nos. 88 & 102 (two declarations from Plaintiff's mother, Glyda Alexander, which are the same except for the date); ECF Nos. 92 & 103 (two declarations from Plaintiff's sister, Sapphira Alexander, which are largely the same, with certain new assertions added in the later-filed declaration).  Plaintiff filed two virtually identical declarations of his own in support of his cross-motion.  *See* ECF Nos. 87 & 104.

[3] Many of the facts included in the parties' Local Civil Rule 56.1 Statements and Counter-statements are irrelevant to the issues in the case.

[4] Plaintiff filed two virtually identical versions of this document on ECF.

and Sapphira went to the self-checkout area of the store, while Glyda waited for them at the exit.
Pl. 7/25 Dep. at 8:4-15, 9:10-11, 15:7-8; Shafeek Decl. Ex. E ("Sapphira 3/29 Dep.") at 23:24-
25:5; Shafeek Decl. Ex. U ("Glyda 11/9 Dep.") at 8:4-16.[5]

Plaintiff maintains that while he was finishing up at the checkout register, a white female
Stop & Shop employee was standing close to him and watching him.  Pl.'s Counter 56.1 ¶ 67; Pl.
7/25 Dep. at 11:21-25 (Plaintiff testified that while he was scanning his purchases and before he
obtained his receipt, the white female Stop & Shop employee was "standing behind me and
hovering over me"); ECF No. 97 at pp. 39-42 ("Sapphira 8/15/23 Decl.") ¶ 3 ("When [Plaintiff]
started to scan his items, she came and stood behind [Plaintiff].  He didn't ask for help or her
[*sic*], nor did she offer help to him.").[6]  According to Plaintiff, as the receipt for his purchases
was printing, the white female Stop & Shop employee called him racial epithets, told him to
"stop stealing," and threatened to call the police.  Pl. 7/25 Dep. at 14:23-15:6 ("It was after when
I was getting my receipt pulling from my hand and about two or three seconds, she said the 'N'
word.  I said, what the heck?  I heard it, but I tried to act like I didn't hear it.  She started
following me and she started to recall the same words."), 16:5-9; Shafeek Decl. Ex. T ("Sapphira
10/27 Dep.") at 12:3-24 ("in the midst of [Plaintiff] getting his receipt is when she had say [*sic*],

---

[5] Glyda, who was deposed twice, testified at her first deposition that she was "right next
to" Plaintiff when he was cashing out, and that she, Sapphira, and Plaintiff were all at the self-
checkout area together.  Glyda 5/16 Dep. at 24:13-25.

[6] Stop & Shop states that this declaration, which was attached to the copy of Plaintiff's
Amended Complaint that was filed with his cross-motion, "has never previously been provided."
ECF No. 98 ("Reply Mem.") at 3.  While it is true that this declaration was not filed with the
standalone Amended Complaint that the Court ordered Plaintiff to file, *see* ECF Nos. 35, 37, the
declaration *was* included with the proposed amended complaint that was attached to Plaintiff's
letter seeking leave to file an amended complaint, *see* ECF No. 33.  Most of the statements in
Sapphira's August 15, 2023 declaration are also included in her April 12, 2024 declaration filed
in support of Plaintiff's cross-motion for summary judgment.  *Compare* Sapphira 8/15/23 Decl.
*with* ECF No. 92 at pp. 1-5 ("Sapphira 4/12/24 Decl.").

hey, stop . . . at the same time of getting the receipt . . . she stepped in a little closer, and that's when she began to accuse him of stealing").  Plaintiff testified at deposition that he began to walk toward the exit, but the white female employee followed and then stopped him, asked to see his receipt, and looked inside his bag of groceries.  Pl.'s Counter 56.1 ¶¶ 77-78; Pl. 7/25 Dep. at 15:9-16, 16:22-17:11 ("I kept walking . . . .  She said, take the stuff back.  I said, what are you talking about?  I have the receipt in my hand.  I showed her . . . .  She said she's going to call the police.  She took her phone out . . . .  She started dialing something and she put it by her ear and I said, okay.  I'm going to call the supervisor and that's how the whole thing started.  That was it really."); Pl. 10/23 Dep. at 26:3-5; Glyda 5/16 Dep. at 28:3-22; Sapphira 3/29 Dep. at 25:11-18; Sapphira 10/27 Dep. at 13:20-15:3.  At her first deposition, Glyda testified that it was right after Plaintiff paid and had his receipt that the white female employee directed racial slurs at him.  Glyda 5/16 Dep. at 28:24-29:22.  According to Glyda, the employee first accused Plaintiff of stealing and then called him the "N word," and even though Plaintiff then showed the employee his receipt, she "called the cops."  *Id.* at 30:2-31:3.  At her second deposition, however, Glyda testified that she did not enter the self-checkout area with Plaintiff and Sapphira, and that from her position by the exit doors, she could not hear what was taking place in the self-checkout area.  Glyda 11/9 Dep. at 8:4-16, 21-25.

According to Plaintiff, no white or non-minority customers were asked to show their receipts or the contents of their shopping bags before they exited the store.  Pl. 10/23 Dep. at 26:21-24 ("You had white citizens that was there, you know.  They wasn't checked.  They wasn't harassed.  They wasn't stopped."); Sapphira 8/15/23 Decl. ¶ 9 ("I didn't see her check or stop non-minority customers [*sic*] bags or receipts before they were leaving."); *see also* Sapphira 10/27 Dep. at 13:9-19 (the only non-white employees or customers in the self-checkout area at

that time were Sapphira and Plaintiff).  Neither Plaintiff nor Sapphira nor Glyda noted the name

on the name tag of the white female Stop & Shop employee.  Pl. 7/25 Dep. at 9:24-10:8; Pl.

10/23 Dep. at 19:3-6; Sapphira 3/29 Dep. at 23:21-23; Sapphira 10/27 Dep. at 9:21-10:10; Glyda

5/16 Dep. at 26:8-10; Glyda 11/9 Dep. at 15:24-16:11.

   Plaintiff, Sapphira, and Glyda then exited the store and went to their car.  Pl. 7/25 Dep. at

17:22-18:5; Sapphira 10/27 Dep. at 17:7-9.  Approximately 10 minutes later, according to

Plaintiff, after placing the groceries in the car, Plaintiff and Sapphira returned to the store and

spoke to the supervisor on duty.  Pl.'s Counter 56.1 ¶¶ 79-80; Pl. 7/25 Dep. at 17:15-16, 18:5-25;

Pl. 10/23 Dep. at 40:6-11; Sapphira 3/29 Dep. at 38:22-39:10; Sapphira 10/27 Dep. at 17:10-15

(Sapphira and Plaintiff returned to the store within 30 minutes); *but see* Glyda 5/16 Dep. at 32:7-

33:6 (before they left the store, Plaintiff spoke to the manager and reported the incident).  Even

then, Plaintiff still did not get the name of the white female Stop & Shop employee.  Pl. 7/25

Dep. at 77:4-10.  The police never came to the store.  Pl.'s Counter 56.1 ¶ 82; Pl. 7/25 Dep. at

21:15-20; Glyda 5/16 Dep. at 31:5-8.

   On unspecified dates in October 2020 and November 2020, Plaintiff was "racial [*sic*]

profiled again by the same female white employee . . . ."  ECF Nos. 87 ("Pl. 4/12/24 Decl.") ¶ 12

& ECF No. 104 ("Pl. 6/19/24 Decl.") ¶ 13; *see* Sapphira 8/15/23 Decl. ¶ 16; Sapphira 4/12/24

Decl. ¶ 15; ECF No. 103 ("Sapphira 6/19/24 Decl.") ¶ 15 (Plaintiff "was harassed and denied

because he encountered the same white female employee and she mentioned to him that she

would call the police on him while he was shopping for soda and biscuits in the aisle.  We left

the store without any purchases.").

## II.    Procedural History

Plaintiff commenced this action on November 7, 2022, ECF No. 1, and filed the

Amended Complaint on August 18, 2023, ECF No. 37.  Following the completion of discovery,

the Court set a briefing schedule for Stop & Shop's motion for summary judgment.  *See* Docket

Sheet, Minute Entry dated 12/11/2023.  In accordance with the schedule, Stop & Shop initially

filed its motion papers on February 2, 2024, ECF No. 72, but due to a failure to comply with

Local Civil Rule 56.2, the Court ordered Stop & Shop to re-file its motion papers, ECF No. 73,

which it did on February 16, 2024, ECF Nos. 74-79.  The Court thereafter granted Plaintiff

permission to file a cross-motion for summary judgment, ECF No. 82, and Plaintiff filed his

cross-motion and opposition papers on April 22, 23, and 24, 2024, ECF Nos. 83-89, 91-92.[7]

Due to issues with docketing, Plaintiff ended up filing the exhibits to his cross-motion on May

10, 2024.  ECF No. 97.  In accordance with a further scheduling order, Stop & Shop filed its

opposition to the cross-motion and reply in further support of its own motion on June 14, 2024.

ECF Nos. 98-100.  Plaintiff filed his reply in further support of the cross-motion on July 1, 2, and

3, 2024.  ECF Nos. 101-107.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

## I.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

---

[7] The Court issued an order, *see* ECF No. 93, explaining that rather than consider Plaintiff's memoranda of law filed at ECF Nos. 84 and 86, it would accept the filing at ECF No. 91 as Plaintiff's final memorandum of law in support of his cross-motion and in opposition to Stop & Shop's motion.  The Court has therefore only considered the arguments set forth in ECF No. 91 ("Pl.'s Mem.").

*v. Catrett*, 477 U.S. 317, 320-23 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court is required to "resolv[e] all record ambiguities and draw[] all factual inferences in favor of the non-moving party."  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145 (2d Cir. 2007); *see also Anderson*, 477 U.S. at 261 n.2; *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002).  A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials" cannot "create" genuine disputes of material fact "where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted).  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  *Anderson*, 477 U.S. at 255; *accord Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 76 (2d Cir. 2023).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."  *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).

The same standard applies to cross-motions for summary judgment.  *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).  In deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Id.* "But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together."  *ExteNet Sys., Inc. Vill. of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

## II.    Filings by *Pro Se* Litigants

In addition, in cases involving *pro se* litigants, on a motion for summary judgment, the court reads the submissions of the *pro se* party "liberally and interpret[s] them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted).  Nonetheless, "application of this different standard does not relieve [the *pro se* party] of his [or her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (quotation marks omitted).  Where *pro se* parties do not adhere to Local Civil Rule 56.1 and its requirements concerning statements of undisputed facts, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . [and] it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted).  "Courts in this Circuit typically forgive a *pro se* plaintiff's failure to file a Local Rule 56.1 Statement, and generally conduct their own independent review of the record." *Lloyd v. Holder*, No. 11-cv-3154 (AT), 2013 WL 6667531, at *5 (S.D.N.Y. Dec. 17, 2013).[8]  Here, although Plaintiff has filed a Local Civil Rule 56.1 Statement, the Court also has undertaken a careful and thorough review of all of the materials filed by Plaintiff in support of his arguments.

---

[8] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases, *infra*, that are unpublished or only available by electronic database shall be simultaneously delivered to *pro se* Plaintiff along with this Opinion and Order.

**DISCUSSION**

I.      **Section 1981 Claims**

        A.      **"Make and Enforce Contracts" Claim**

Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the
> same right in every State and Territory to make and enforce contracts, to
> sue, be parties, give evidence, and to the full and equal benefit of all laws
> and proceedings for the security of persons and property as is enjoyed by
> white citizens, and shall be subject to like punishment, pains, penalties,
> taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The statute defines the term "make and enforce contracts" to include "the

making, performance, modification, and termination of contracts, and the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

        To establish a violation of Section 1981, "a plaintiff must set forth facts to demonstrate

that: '(1) the plaintiff is a member of a racial minority; (2) [there was] an intent to discriminate

on the basis of race by the defendant; and (3) the discrimination concerned one or more of the

activities enumerated in the statute,'" such as the making and enforcement of contracts.  *Kosher*

*Ski Tours, Inc. v Okemo Limited Liab. Co.*, No. 20-cv-9815 (VB), 2023 WL 8720273, at *7

(S.D.N.Y. Dec. 18, 2023) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d

1085, 1087 (2d Cir. 1993) (*per curiam*)).  In order to satisfy the third element of a Section 1981

"make and enforce contracts" claim, a plaintiff must present evidence that he was "actually

prevented from making a purchase."  *See*, *e.g.*, *Anacacy v. Panera, LLC*, No. 19-cv-7126 (ENV)

(RLM), 2021 WL 2431010, at *4 (E.D.N.Y. June 9, 2021) (quoting *Rogers v. Elliott*, 135 F.

Supp. 2d 1312, 1315 (N.D. Ga. 2001) ("Virtually all federal courts that have analyzed Section

1981 claims in the retail merchandise context have required the plaintiff to show that he [or she]

was actually prevented from making a purchase."); *Jackson v. Citi Trends, Inc.*, No. 20-cv-14

(GLS) (ATB), 2020 WL 6561359, at *2 (N.D.N.Y. Nov. 9, 2020) ("[T]o the extent plaintiffs assert a claim pursuant to 42 U.S.C. § 1981, it must be dismissed because, accepting their allegations as true, plaintiffs were not prevented from purchasing anything from Citi Trends; rather, at most, their service was delayed.").  Here, with respect to the incident on August 7, 2020, there is no evidence that Plaintiff was prevented from completing his purchase of groceries at the store.  Rather, the evidence in the record is consistent in establishing that the alleged discriminatory conduct occurred *after* Plaintiff had completed his purchase of groceries.

At his first deposition, Plaintiff testified that the white female Stop & Shop employee first communicated with him after he scanned his items: "when I was getting my receipt pulling from my hand and about two or three seconds, she said the 'N' word."  Pl. 7/25 Dep. at 14:19-25.  Plaintiff stated that the woman started to follow him "[a]fter I had the receipt in my hand.  She saw the receipt in my hand."  *Id.* at 15:9-13.  At her first deposition, when asked whether Plaintiff "completed his purchase," Sapphira responded, "Yes."  Sapphira 3/29 Dep. at 32:17-21.  At her second deposition, Sapphira testified that the first time the white female Stop & Shop employee said anything to either her or Plaintiff was "at the same time of getting the receipt."  Sapphira 10/27 Dep. at 12:5-18.  She testified that at that point, the employee "began to accuse [Plaintiff] of stealing."  *Id.* at 12:19-24.  Sapphira agreed that Plaintiff was "in no way" "prevented from scanning his items, putting the [TD Bank] card in, and getting a receipt[.]"  *Id.* at 13:4-8.  She added that it was then that "the whole incident happened."  *Id.* at 13:20-14:4.  At her first deposition, Glyda testified that Plaintiff finished making his purchase: "[h]e did pay for the purchase; he had a receipt in his hand, yes."  Glyda 5/16 Dep. at 25:2-7; *see id.* at 38:3-7.  She testified that the white female Stop & Shop employee followed Plaintiff "after he paid," when they were walking to the exit.  *Id.* at 28:3-22.

In her declaration in support of Plaintiff's cross-motion, Sapphira states that she "witnessed [Plaintiff] being forced to complete his transaction on different terms than non-minorities at Stop & Shop . . . ," Sapphira 4/12/24 Decl. ¶ 1, but the only conduct that occurred before the transaction was completed was that the white female employee "stood behind [Plaintiff] closely," *see id.* ¶ 2. According to Sapphira, it was "[w]hile the receipt was in the process of printing," *i.e.*, after the purchase of groceries had been completed, that the white female Stop & Shop employee said to Plaintiff "'[h]ey Nigga, stop stealing,'" *id.* ¶ 3; *see also* Pl. 4/12/24 Decl. ¶ 5; Sapphira 4/12/24 Decl. ¶¶ 4-5; ECF No. 88 ("Glyda 4/23/24 Decl.") ¶ 5 ("Stop & Shop female employee purposely followed my son after he completed his transaction and was calling him derogatory names 'Black Nigga.'"). The completion of the purchase is further evidenced by a bank record produced by Plaintiff, which shows that Plaintiff made a purchase at Stop & Shop on August 7, 2020. *See* Shafeek Decl. Ex. H; Pl. 7/25 Dep. at 82:14-83:18.

"Courts that have addressed section 1981 claims in the context of retail transactions have held that after a purchase is completed, there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction—the purchase of goods." *Drayton v. Toys 'R' Us Inc.*, 645 F. Supp. 2d 149, 157-58 (S.D.N.Y. 2009) (cleaned up). Plaintiff has provided no evidence that any discriminatory conduct occurred until *after* he completed his purchase of groceries. Accordingly, Stop & Shop is entitled to summary judgment on Plaintiff's Section 1981 claim related to the incident on August 7, 2020, to the extent it is based on his right to make and enforce contracts. *See id.* at 158 ("[The plaintiffs'] Section 1981 contract claims fail as a matter of law because it is undisputed that each of the [plaintiffs] was alleged to have been stopped and asked to show their receipts after each [p]laintiff had completed their purchase and

were attempting to exit the store.  Thus the contractual relationship between [the plaintiffs] and defendants had ended, and none of defendants' actions interfered with their right to make or enforce that contract.") (cleaned up); *see also*, *e.g.*, *Bishop v. Best Buy Co. Inc.*, No. 08-cv-8427 (LBS), 2010 WL 4159566, at *4 (S.D.N.Y. Oct. 13, 2010) (dismissing Section 1981 "make and enforce contracts" claim where alleged detention and assault occurred after plaintiff completed his purchase and was attempting to exit the store).

Plaintiff also seeks to assert Section 1981 "make and enforce contracts" claims based on subsequent incidents on unspecified dates in October 2020 and November 2020, but he provides nothing other than conclusory allegations of an intent to discriminate on the basis of race. Specifically, Plaintiff states in his declarations that "[d]uring the months of October and November, I was racial [*sic*] profiled again by the same female white employee . . . ."  Pl. 4/12/24 Decl. ¶ 12 & Pl. 6/19/24 Decl. ¶ 13.  And according to Sapphira, "[i]n the months of October and November, on two or three accounts being there, [Plaintiff] was harassed and denied because he encountered the same white female employee and she mentioned that she would call the police on him while he was shopping for soda and biscuits in the aisle.  We left the store without any purchases."  Sapphira 8/15/23 Decl. ¶ 16, Sapphira 4/12/24 Decl. ¶ 15 & Sapphira 6/19/24 Decl. ¶ 15.

"Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it."  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001).  Plaintiff's conclusory assertion that he was "racial[ly] profiled," and Sapphira's conclusory assertion that Plaintiff was "harassed and denied," without more, do not support an inference of race-based animus.  Accordingly, Stop & Shop is entitled to summary judgment on Plaintiff's Section 1981 "make and enforce

contracts" claim to the extent it is based on alleged further incidents in October 2020 and November 2020.  *See id.* at 104 ("[A] jury cannot infer discrimination from thin air.  Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.  This is not sufficient.") (citation omitted); *see also Drayton*, 645 F. Supp. 2d at 162 (the plaintiff's "unsubstantiated, conclusory allegation of discrimination does not raise an inference of discrimination") (cleaned up).

For all these reasons, Stop & Shop's motion for summary judgment on Plaintiff's Section 1981 "make and enforce contracts" claims is GRANTED, and Plaintiff's cross-motion on these claims is DENIED.

### B.    "Equal Benefit" Claim

Section 1981 also bars discrimination that deprives an individual of the "full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  "Prospective plaintiffs first must prove a racial animus, not an easy task in itself; second must identify a relevant law or proceeding for the 'security of persons and property;' and finally must persuade a fact-finder or the court that defendants have deprived them of 'the full and equal benefit' of this law or proceeding."  *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003); *see Drayton*, 645 F. Supp. 2d at 158 (as with a "make and enforce contracts" claim, "[a]n equal benefit claim under Section 1981 requires proof that [i] the plaintiff is a member of a racial minority, [ii] the defendants intended to discriminate on the basis of race, and [iii] the discrimination concerns one of the statute's enumerated activities.") (quotation marks omitted).  "An inference of discrimination arises when an individual of one race is treated less favorably than those of another race who are similarly situated."  *Bishop*, 2010 WL 4159566, at *5 (cleaned up).  "A Section 1981 'equal benefit' claim requires a nexus to state proceedings or

laws, even though state action is not required." *Drayton*, 645 F. Supp. 2d at 158 (quotation marks omitted).

Here, given Plaintiff's *pro se* status, the Court is required to read his pleadings and evidentiary submissions "liberally and [to] interpret them to raise the strongest arguments that they suggest." *Jorgensen*, 351 F.3d at 50 (quotation marks omitted).  In the "Facts" section of the Amended Complaint, Plaintiff alleges that "[b]efore I had the opportunity to enter the payment, the female Stop and Shop employee made an inference that prevented my transaction from being completed *with full and equal benefit* enjoyed by white citizens at the Stop and Shop."  Am. Compl. Section III (emphasis added).  The Amended Complaint then sets forth further allegations of discriminatory conduct, including that the white female Stop & Shop employee called Plaintiff "Nigga" and told him to "stop stealing," even though he had his receipt in his hand and she saw it; that as he walked to the exit, she said that she was going to call the police on Plaintiff, so he should stop; and that she then forced Plaintiff to show her his receipt and checked his grocery bags, but white or non-minority customers did not have their grocery bags checked before exiting the store.  *Id.*  In the "Basis for Jurisdiction" section of the Amended Complaint, Plaintiff lists various statutes that his claims arise under, including 42 U.S.C. § 1981; the New York Human Rights Law, N.Y. Exec. Law § 296 *et seq.*; New York Civil Rights Law § 40; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* Furthermore, Plaintiff has produced evidence of intentional race-based discrimination based on (i) the alleged use of racial epithets by the Stop & Shop employee, *see*, *e.g.*, Pl. 7/25 Dep. at 14:23-15:6 ("It was after when I was getting my receipt pulling from my hand and about two or three seconds, she said the 'N' word."); Pl. 4/12/24 Decl. ¶ 5 ("The receipt was in the process of being printed.  Stop & Shop female white employee stated, 'Hey Nigga, stop stealing.'");

Sapphira 10/27 Dep. at 13:23-14:4 ("She was, like, hey, stop. And then she's—derogatory name, the N-word."); Sapphira 8/15/23 Decl. ¶¶ 4, 6 (white female Stop & Shop employee called Plaintiff "Nigga" and "Black Nigga" and accused him of stealing while the receipt was printing out and as Plaintiff was walking to the exit); and (ii) evidence that white or non-minority customers were not stopped and asked to show their receipts or have their bags inspected before exiting the store, *see* Pl. 10/23 Dep. at 26:21-24 ("You had white citizens that was there, you know. They wasn't checked. They wasn't harassed. They wasn't stopped."); Sapphira 8/15/23 Decl. ¶ 9 ("I didn't see her check or stop non-minority customers [*sic*] bags or receipts before they were leaving."); *see also* Sapphira 10/27 Dep. at 13:9-19 (the only non-white employees or customers in the self-checkout area at that time were Sapphira and Plaintiff). Reading Plaintiff's pleadings and the evidence submitted in connection with these motions liberally, the Court finds that Plaintiff has come forward with sufficient evidence to raise a triable issue of fact as to a Section 1981 "equal benefit" claim based on the August 7, 2020 incident.[9]

Even where a plaintiff has completed a transaction in a retail store, a plaintiff can establish a Section 1981 "equal benefit" claim when the plaintiff demonstrates that subsequent racially discriminatory conduct deprived him or her of the "full and equal benefit" of a law or proceeding "for the security of persons and property," such as the NYHRL, which prohibits discrimination in places of public accommodation including "retail stores." *See, e.g., Drayton*, *supra*. In *Drayton*, the plaintiffs, who were African-American, alleged that they had purchased merchandise at Toys 'R' Us stores, and after making their purchases and going to exit the stores,

---

[9] As previously stated, Plaintiff makes no more than conclusory allegations of an intent to discriminate on the basis of race with respect to the alleged incidents in October and November 2020. Accordingly, even interpreting Plaintiff's *pro se* submissions to raise the strongest arguments that they suggest, there is no basis for Plaintiff to proceed on a Section 1981 "equal benefit" claim with respect to the October and November 2020 incidents.

were stopped and asked to show their receipts, while white customers were not asked to do so.
645 F. Supp. 2d at 155-57.  The court granted summary judgment to the defendants on the
plaintiffs' Section 1981 claims based on the right to make and enforce contracts since it was
"undisputed that each of the [plaintiffs] was alleged to have been stopped and asked to show
their receipts *after* each [p]laintiff had completed their purchase and were attempting to exit the
store."  645 F. Supp. 2d at 158 (emphasis added).  But the defendants' motion for summary
judgment was denied as to the plaintiffs' Section 1981 equal benefit claims, since the court found
there were material issues of fact regarding whether the plaintiffs "were singled out for unlawful
oppression by the alleged enforcement of Toys' receipt checking policy."  *Id.* at 159; *see also id.*
("A reasonable jury could conclude that the [plaintiffs] were intentionally discriminated against
on the basis of their race if it were to credit the claims that the [plaintiffs] could not exit a Toys
store without having to show their receipt while non-African American customers were
permitted to exit Toys stores without having to show their receipts.").  In addition, the court
noted that the plaintiffs "have alleged that the [d]efendants' racially discriminatory conduct
deprived them of the full and equal benefit of New York State Executive Law § 296[,] a state
civil rights law which protects the security of persons and property," and that there were material
issues of fact "as to whether [d]efendants intentionally discriminated against the [plaintiffs] in
administering the Toys receipt checking policy under New York Executive Law § 296 (which
'prohibits racial discrimination in places of public accommodation'[ [10]])."  *Id.*; *see* New York
Exec. Law § 292(9) (defining places of public accommodation to include "retail stores").

---

[10] The statute provides that "[i]t shall be an unlawful discriminatory practice for any
person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any
place of public accommodation . . . because of the race, creed, color, . . . of any person, directly
or indirectly, to refuse, withhold from or deny to such person any of the accommodations,
advantages, facilities or privileges thereof . . . ."  New York Exec. Law § 296(2)(a).

Consequently, the court concluded that the plaintiffs "appear[ed] to have demonstrated a nexus to state proceedings or laws in that they have identified a relevant law or proceeding for the security of persons and property, and material issues of fact remain as to whether [d]efendants deprived them of the full and equal benefit of this law or proceeding." *Drayton*, 645 F. Supp. 2d at 160 (cleaned up).

Stop & Shop's motion papers do not address whether Plaintiff can succeed on a Section 1981 equal benefit claim.[11] But in this case, like *Drayton*, there are genuine issues of material fact as to whether Plaintiff was intentionally discriminated against when he was subjected to having his receipt and bag checked before exiting the store, while the receipts and bags of white or non-minority customers were not, and whether he was thus deprived of the full and equal benefit of the NYHRL. Accordingly, Stop & Shop is not entitled to summary judgment on this claim as it pertains to the August 7, 2020 incident. *See id.* at 158-60 (denying summary judgment on plaintiffs' Section 1981 equal benefit claims); *see also Martin v. J.C. Penney Corp., Inc.*, 28 F. Supp. 3d 153, 156-58 (E.D.N.Y. 2014) (denying summary judgment on Section 1981 equal benefit claim where court found that "[d]isputed issues of material fact exist with respect to defendants' discriminatory intent in detaining plaintiffs as suspected shoplifters"). Moreover, because a decision on the merits of this claim rests entirely on credibility determinations, which the Court cannot make in deciding a motion for summary judgment, *see Anderson*, 477 U.S. at 255, Plaintiff is not entitled to summary judgment on this claim either. Therefore, to the extent

---

[11] Stop & Shop grounded its motion on the understanding that all of the alleged discriminatory conduct took place after Plaintiff had completed his purchases on August 7, 2020. Yet Stop & Shop did not ever address the Section 1981 claim that can arise in a retail setting after a purchase is made. By contrast, the Court must grant special solicitude to the submissions of a *pro se* plaintiff and determine the viability of any Section 1981 equal benefit claim that Plaintiff might be trying to assert in this action.

Stop & Shop's motion, and Plaintiff's cross-motion, can be read as seeking summary judgment on Plaintiff's Section 1981 "equal benefit" claim for the August 7, 2020 incident, those portions of the motions are both DENIED.[12]

## II.    State and Municipal Law Claims

### A.    NYHRL

The same legal standard applies to claims under Section 1981, the NYHRL, and the New York Civil Rights Law.[13] (although neither Stop & Shop nor Plaintiff seeks summary judgment on the merits of Plaintiff's New York Civil Rights Law claim[14]).  *See Henry v. Lucky Strike Ent., LLC*, No. 10-cv-3682 (RRM) (MDG), 2013 WL 4710488, at *12 (E.D.N.Y. Sept. 1, 2013) ("plaintiffs' claims pursuant to [New York Civil Rights Law] § 40 [and] [NYHRL] § 296 . . . are analyzed identically to the[ ] section 1981 claims."); *see also Drayton*, 645 F. Supp. 2d at 163-64 (declining to grant summary judgment on state law claims under NYHRL and New York Civil Rights Law where summary judgment was denied on federal Section 1981 "equal benefit" claim).  Because the Court has granted summary judgment to Stop & Shop, and denied summary judgment to Plaintiff, on Plaintiff's Section 1981 "make and enforce contracts" claim, summary judgment is also therefore GRANTED on Stop & Shop's motion, and DENIED on Plaintiff's

---

[12] Because the Court denies summary judgment on this claim, it need not address the parties' disputes concerning the identity of the white female Stop & Shop employee and the evidence produced with respect to this issue.

[13] New York Civil Rights Law § 40 prohibits the denial of access to places of public accommodation on the basis of race.  *See* N.Y. Civ. Rights Law § 40.  The language in New York Civil Rights Law § 40 closely tracks the language in the NYHRL provisions cited in Section I.B, *supra*.

[14] Stop & Shop has only moved for summary judgment on the New York Civil Rights Law claim based on the failure to give notice to the New York State Attorney General.  *See* Section II.B, *infra*.  Plaintiff has not cross-moved for summary judgment on this cause of action.

cross-motion, regarding Plaintiff's NYHRL claim based on those same allegations.  But because

Plaintiff's Section 1981 "equal benefit" claim will proceed to trial as to the events of August 7,

2020, Plaintiff's NYHRL claim based on those same allegations will proceed to trial as well.  *See*

*Drayton*, 645 F. Supp. 2d at 163-64.  Accordingly, both Stop & Shop's motion for summary

judgment, and Plaintiff's cross-motion for summary judgment, are DENIED as to Plaintiff's

NYHRL claim based on the denial of the "equal benefit" of the law.

> **B.**    **New York Civil Rights Law §§ 40-41**

Stop & Shop contends that it is entitled to summary judgment on Plaintiff's New York

Civil Rights Law claim based on Plaintiff's failure to give notice prior to bringing suit.  *See* ECF

No. 76 ("Def.'s Mem.") at 7-8.

"New York Civil Rights Law § 41 establishes a private cause of action to recover a

statutory penalty against those who violate the[] rights [established by New York Civil Rights

Law § 40] or who aid or incite such a violation."  *Feacher v. Intercontinental Hotels Grp.*, 563 F.

Supp. 2d 389, 407 (N.D.N.Y. 2008) (cleaned up).  The statute provides, in relevant part that:

> Any . . . corporation . . . which shall violate any of the provisions of
> section[ ] forty . . .  or which shall aid or incite the violation of any of said
> provisions . . . shall for each and every violation thereof be liable to a
> penalty of not less than one hundred dollars nor more than five hundred
> dollars, to be recovered by the person aggrieved thereby . . . in any court
> of competent jurisdiction in the county in which the plaintiff or the
> defendant shall reside.

N.Y. Civ. Rights Law § 41.  Section 41 requires that "[a]t or before the commencement of any

action under this section, notice thereof shall be served upon the attorney general."  N.Y. Civ.

Rights Law § 41.  "The failure to comply with the notice provisions of New York Civil Rights

Law Article 4 is fatal to a private action under that Article."  *Feacher*, 563 F. Supp. 2d at 407

(citation omitted).  "Additionally, failure to allege such compliance may mandate dismissal if a plaintiff is unable to show that notice was actually given." *Id.* (quotation marks omitted).

Plaintiff does not allege compliance with the notice requirement in his Amended Complaint, but Stop & Shop acknowledges that "Plaintiff has exchanged a letter dated February 2, 2023, 18 months post-date of incident, from the New York State Attorney General's Office," Def.'s Mem. at 7, and has produced the letter as part of its moving papers, *see* Shafeek Decl. Ex. M.  The letter states that based on the information provided by Plaintiff, the Attorney General's Office was "unable to investigate this matter because it does not appear to allege a pattern or practice of discrimination," and suggests that Plaintiff consider filing an individual complaint with the New York State Division of Human Rights.  *Id.*  Plaintiff states in his cross-motion/opposition brief that he "can submit evidence to the Court that the Attorney General of the State of New York was served with notice of this action 'at or before the commencement' of suit," Pl.'s Mem. at 19, but he has not done so despite his voluminous filings—no correspondence from Plaintiff to the Attorney General's Office is in the record before the Court. It is clear that Plaintiff submitted *something* to the Attorney General's Office at some time about some issue, which prompted the February 2, 2023 response from that office, but it is impossible to assess, on the current record, whether Plaintiff's submission to the Attorney General's Office was made prior to the commencement of this action in November 2022, or even whether it concerned the 2020 incidents at Stop & Shop.  Because of the ambiguity in the record, the Court cannot determine whether Plaintiff provided the required noticed to the Attorney General's Office at the appropriate time; that said, in light of Plaintiff's representation in his brief and in light of Plaintiff's *pro se* status, the Court also cannot conclude as a matter of law that Plaintiff has not satisfied the notice requirement of Section 41 of the New York Civil Rights Law.

Accordingly, Stop & Shop's motion for summary judgment on Plaintiff's New York Civil Rights Law claim based on the failure to give notice is DENIED.  The Court will revisit this issue with the parties in advance of trial, potentially through pre-trial motion practice.  The parties must be prepared to discuss this point in greater detail at the next status conference.  *See Feacher*, 563 F. Supp. 2d at 407-08 ("Plaintiffs have not alleged that they have complied with the notice provisions of § 41, and there is no indication on the present record that such notice was actually given.  Accordingly, the §§ 40 and 41 claims will be dismissed . . . unless [p]laintiffs submit evidence to the [c]ourt and opposing counsel that the Attorney General of the State of New York was served with notice of this action 'at or before the commencement' of suit.").

### C.    NYCHRL

"The *New York City* Human Rights Law applies only to acts that occur within the boundaries of New York City."  *Reyes v. Westchester Cnty. Health Care Corp.*, No. 19-cv-8916 (PMH), 2021 WL 310945, at *6 (S.D.N.Y. Jan. 29, 2021) (quotation marks omitted) (emphasis in original), *aff'd*, 2021 WL 4944285 (2d Cir. Oct. 25, 2021) (summary order).  Plaintiff concedes that the acts complained of occurred at a Stop & Shop store in White Plains, New York, which is in Westchester County.  *See* Pl. 7/25 Dep. at 6:20; *see also*, *e.g.*, Sapphira 3/29 Dep. at 37:8-16; Glyda 5/16 Dep. at 38:25-39:6; Glyda 11/9 Dep. at 19:6-9.  Plaintiff therefore cannot bring a claim under the NYCHRL.  Accordingly, Stop & Shop's motion for summary judgment on Plaintiff's NYCHRL claim is GRANTED, and Plaintiff's cross-motion for summary judgment on this claim is DENIED.[15]

---

[15] The Court need not address Stop & Shop's arguments concerning purported claims of bribery and intentional infliction of emotional distress as Plaintiff states in his cross-motion papers that he is not asserting such claims.  *See* Pl.'s Mem. at 18, 19.  Furthermore, while Stop & Shop purports to seek summary judgment on a *prima facie* tort claim, *see* Def.'s Mem. at 9-10,

## III.    Punitive Damages

Although Plaintiff's request for punitive damages is not a standalone claim but rather a

request for relief, Stop & Shop nonetheless argues in its motion papers that Plaintiff is not

entitled to this potential category of damages.  It contends, in conclusory fashion, that Plaintiff

cannot seek punitive damages because (i) he is not entitled to compensatory damages, having

suffered no injuries, "and therefore punitive damages are not applicable"; and (ii) he cannot

prove that Stop & Shop's actions were willful, wanton, reckless, or malicious.  Def.'s Mem. at

10; Reply Mem. at 8.  Stop & Shop has offered no legal argument for why the recovery of

punitive damages on the remaining claims would be precluded as a matter of law, and its

contentions are based on its conclusory assessment of the evidence.  Because the Court finds that

this case should proceed to trial as to certain claims, whether or not Plaintiff will be able to prove

that Stop & Shop's actions were willful, wanton, reckless, or malicious is a matter to be decided

at that time. [16] [17] [18]

---

no such claim is asserted in the Amended Complaint.  The Court therefore also declines to
address this argument.

[16] While there is no dispute that Plaintiff does not assert a claim for intentional infliction
of emotional distress in this case, there is a dispute as to whether Plaintiff may recover emotional
distress damages if he succeeds on his claims.  That, too, is an issue to be determined at trial.

[17] The parties also raise various evidentiary issues: (i) Plaintiff moves to strike an audio
recording submitted by Stop & Shop, *see* Pl.'s Mem. at 20, and Stop & Shop responds that if its
audio recording is stricken then Plaintiff's submitted audio recording should be stricken from the
record as well, *see* Reply Mem. at 8; and (ii) Plaintiff moves to preclude Stop & Shop from
introducing the affidavit of employee Elia Cardenas in its cross-motion opposition papers, *see*
ECF No. 106 at 16-17.  Because the Court has not relied on either of the audio recordings or the
affidavit of Elia Cardenas in deciding the motion and cross-motion, it need not address these
evidentiary motions here.  Any issues regarding the admissibility of this evidence at trial may be
addressed in either pre-trial motions *in limine* or during the trial itself.

[18] Plaintiff has indicated that he wishes to make a separate motion for sanctions against
Stop & Shop's counsel on the ground counsel has acted in bad faith in this litigation.  *See* ECF
No. 106 at 18-19.  Whether or not to impose sanctions on counsel is a matter left to the Court's

**CONCLUSION**

For the reasons stated above, Stop & Shop's motion for summary judgment (ECF No. 74) is GRANTED IN PART AND DENIED IN PART, and Plaintiff's cross-motion for summary judgment (ECF No. 83) is DENIED.  Stop & Shop is granted summary judgment on Plaintiff's Section 1981 "make and enforce contracts" claims and his NYCHRL discrimination claim.  The claims remaining in the case at this time are Plaintiff's Section 1981 "equal benefit" claim based on the events of August 7, 2020, and his discrimination claims under the NYHRL and New York Civil Rights Law for these same events.

A status conference to discuss the next steps in this matter is hereby scheduled for October 17, 2024 at 10:00 a.m.  To access the teleconference, please (1) dial the meeting number: (877) 336-1831; (2) enter the access code: 2751700; and (3) press pound (#) to enter the teleconference as a guest.  Should the parties experience any technical issues with the teleconferencing system, please contact Chambers at (914) 390-4070.  At the conference, the parties must be prepared to discuss their availability for trial in the months of January, February, March, April, and May 2025, and their availability to participate in a settlement conference,

---

discretion, and an order of sanctions "must always be made with restraint."  *Palmer v. Simon's Agency, Inc.*, 833 F. App'x 838, 839 (2d Cir. 2020) (summary order).  The Court has already informed Plaintiff that personal attacks on Stop & Shop's counsel are not appropriate.  *See* ECF No. 96.  Moreover, Plaintiff has not presented the Court with any basis for imposing sanctions on Stop & Shop's counsel.  In numerous conferences throughout the course of this litigation, and in the many filings that the Court has reviewed, there has been no evidence that counsel for Stop & Shop has acted in bad faith, or that she has "negligently or recklessly fail[ed] to perform [her] responsibility as an officer of the court."  *Palmer*, 833 F. App'x at 839.  The Court cautions that if any future motion is based on nothing more than the assertions included in Plaintiff's cross-motion papers, the motion will be denied.

either via the Court's mediation program or with a different Magistrate Judge, in November or

December 2024.

Dated:  September 30, 2024
        White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Opinion and Order has been mailed to the *pro se* Plaintiff by Chambers staff at his address of record on the docket.