UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JERIEL ALEXANDER,

                     Plaintiff,                  **OPINION AND ORDER**

        -against-                  22-cv-9557 (AEK)

THE STOP AND SHOP SUPERMARKET
COMPANY, LLC,

                     Defendant.
-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

       Plaintiff Jeriel Alexander, proceeding *pro se*, brought this action against Defendant The Stop and Shop Supermarket Company, LLC, asserting claims pursuant to 42 U.S.C. § 1981, the New York Human Rights Law, and the New York Civil Rights Law for the alleged violation of his right to the equal benefit of the law. Trial in this action commenced on March 17, 2025, and on March 19, 2025, the jury returned a verdict in favor of Defendant on all claims. ECF Nos. 141, 142. Currently before the Court is Plaintiff's "Motion for Judgment as a Matter of Law." ECF Nos. 143, 144.[1] For the reasons that follow, Plaintiff's motion is DENIED.

---

[1] Although the notice of motion does not state that Plaintiff is seeking a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, *see* ECF No. 143, Plaintiff does request "a new trial" as an alternative form of relief in his memorandum of law in support of the motion, *see* ECF No. 144 ("Pl.'s Mem.") at 3. (Citations to the "Pl.'s Mem." are to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.) This is consistent with the text of Rule 50(b) of the Federal Rules of Civil Procedure, which provides that a post-trial motion for judgment as a matter of law "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). Moreover, in his reply papers, Plaintiff explicitly states that he is seeking a new trial under Rule 59. *See* ECF No. 152 ("Reply Mem.") at 4-5.

# I.    Legal Standards

## A.    Rule 50

Rule 50(b) of the Federal Rules of Civil Procedure permits the filing of a motion for judgment as a matter of law no later than 28 days after the entry of judgment.  In the typical Rule 50(b) analysis, "[t]o warrant post-verdict judgment as a matter of law, the movant must show that the evidence, when viewed most favorably to the non-movant, was insufficient to permit a reasonable juror to have found in the non-movant's favor."  *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018).  "The standard is a high one, met only in rare occasions."  *Id.* (quotation marks omitted).  "The movant, generally, must be able to show a complete absence of evidence supporting the verdict such that the jury's findings could only have been the result of sheer surmise and conjecture."  *Id.* (quotation marks omitted).

But a party may file a Rule 50(b) motion only if the Court previously denied that party's motion for judgment as a matter of law made at trial pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 50(a) (requiring that an initial motion for judgment as a matter of law be made "at any time before the case is submitted to the jury"); *see* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), . . . the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." (emphasis added)); *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 41 (2d Cir. 2025) ("A post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury." (quotation marks omitted)).

"If a party fails to move under Rule 50(a) before the matter is submitted to the jury but later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice." *Edelman*, 141 F.4th at 41 (quotation marks omitted). "Manifest injustice exists where a jury's verdict is wholly without legal support." *Id.* (quotation marks omitted). "And in deciding any Rule 50 motion, a court must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Hutchinson v. Grace*, No. 19-cv-270 (AKH), 2022 WL 1154347, at *2 (S.D.N.Y. Apr. 19, 2022)[2] (quotation marks omitted).

### B.    Rule 59

Given Plaintiff's reference in his moving brief to seeking a new trial, as well as his explicit reference to Rule 59(a) of the Federal Rules of Civil Procedure in his reply brief, *see* footnote 1, *supra*, the Court will, in the alternative, treat Plaintiff's submissions as a motion for a new trial pursuant to Rule 59(a). As set forth in Rule 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). For a district court to order a new trial pursuant to Rule 59(a), it must conclude that the jury "reached a seriously erroneous result" or that "the verdict is a miscarriage of justice"—in other words, the court "must view the jury's verdict as against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (cleaned up).

---

[2] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases, *infra*, that are unpublished or only available by electronic database are being simultaneously delivered to *pro se* Plaintiff along with this Opinion and Order.

A motion for a new trial pursuant to Rule 59 may be granted "even when there is evidence to support the jury's verdict." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 456 (2d Cir. 2009); *see Manley*, 337 F.3d at 244-45 ("a trial judge is free to weigh the evidence himself [or herself], and need not view it in the light most favorable to the verdict winner" (quotation marks omitted)).  But a court "should only grant such a motion when the jury's verdict is egregious," and "should rarely disturb a jury's evaluation of a witness's credibility."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (quotation marks omitted); *see Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 558-59 (S.D.N.Y. 2010) ("In weighing the evidence, . . . the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility" (quotation marks omitted)).

## II.    Analysis

The Court assumes the parties' familiarity with the facts of this case and does not recite them here except as necessary to resolve the motion.[3]

### A.    Rule 50(b) Motion for Judgment as a Matter of Law

Plaintiff never filed a motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure prior to this matter being submitted to the jury.  Indeed, in his submissions in support of his post-trial motion, Plaintiff never claims that he filed a Rule

---

[3] In his initial moving papers, Plaintiff cites deposition testimony from the discovery phase of this case rather than trial testimony, presumably because he did not have transcripts of the trial.  *See* Pl.'s Mem. at 3-6.  Deposition testimony is not relevant, however, to a determination of this motion, because it is the trial testimony, not the deposition testimony, that was before the jury at trial.  On April 8, April 9, and July 10, 2025, the trial transcripts were filed on ECF, *see* ECF Nos. 146, 148, 155, and the Court is therefore able to cite to the trial testimony in this Opinion and Order.  Even though Plaintiff apparently did not have the trial transcripts when he prepared his moving and reply papers, Plaintiff still provided sufficiently detailed accounts of the statements and testimony from the trial for the Court to understand the basis for the motion.

50(a) motion—instead, he refers to the Rule 50(a) motion filed by Defendant, *see* Pl.'s Mem. at 2, which does not satisfy Plaintiff's own obligation to seek relief under Rule 50(a). As a result, Plaintiff's Rule 50(b) is subjected to the "elevated" standard of review specified by the United States Court of Appeals for the Second Circuit. *See Edelman*, 141 F.4th at 41. Accordingly, in order to prevail on his motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Plaintiff must demonstrate that granting the motion is necessary to prevent manifest injustice. The Court finds that he has failed to do so, since Plaintiff cannot show that the jury's verdict is "wholly without legal support."

As the Court explained in its summary judgment decision, ECF No. 109, Section 1981 bars discrimination that deprives an individual of the "full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). The Second Circuit has stated that to succeed on a Section 1981 equal benefit claim, a plaintiff "first must prove a racial animus . . . ; second must identify a relevant law or proceeding for the 'security of persons and property;' and finally must persuade a fact-finder or the court that defendants have deprived them of 'the full and equal benefit' of this law or proceeding." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003) (quoting 42 U.S.C. § 1981(a)).

At trial, the Court instructed the jury[4] that in order to establish his Section 1981 equal benefit claim, Plaintiff had to prove, by a preponderance of the evidence, each of the following three elements: (1) that he is a member of a protected class; (2) that Defendant intentionally and purposefully discriminated against Plaintiff on the basis of race; and (3) that the discrimination interfered with a protected activity, *i.e.*, Plaintiff's right to the equal benefit of a law for the

---

[4] Neither Plaintiff nor Defendant objected to the jury instructions. *See* ECF No. 148 ("March 18 Tr.") at 185-86. (Citations to the "March 18 Tr." are to the page numbers assigned by the ECF system.)

security of persons and property.  *See* ECF No. 155 ("March 19 Tr.") at 36-38.[5]  The Court

further instructed the jury that the same substantive legal standard applied to Plaintiff's claims

under the New York Human Rights Law and the New York Civil Rights Law.  *See* March 19 Tr.

at 37, 40.  In rendering its verdict in favor of Defendant, the jury found that Plaintiff had not

proven by a preponderance of the evidence all of the elements of his equal benefit claims.  *See*

ECF No. 141.[6]

    While Plaintiff contends that *Defendant* "presented no probative evidence from which a

reasonable jury could conclude that [Plaintiff] wasn't discriminated against and or treated less

differently from other non-minorities through defendant circumstantial evidence or direct

evidence," Pl.'s Mem. at 11, it was *Plaintiff's* burden at trial to prove his claims by a

preponderance of the evidence, *see* March 19 Tr. at 26-27; *see Ruggiero v. Krzeminski*, 928 F.2d

558, 562 (2d Cir. 1991) ("It is elementary that in a civil action, the plaintiff bears the burden of

proof on all essential elements of a claim.").  Plaintiff maintains that his "preponderance of

evidence was that a similarly situated individual outside of the Plaintiff's protected class

received more favorable treatment than the plaintiff [*sic*] can raise an inference of intentional

discrimination through testimonies of fact witnesses, because their bags or receipts weren't

---

[5] Citations to the "March 19 Tr." are to the page numbers assigned by the ECF system.

[6] The New York Civil Rights Law claim had an added element: in order to succeed on this claim, Plaintiff also had to prove, by a preponderance of the evidence, that on or before the date he filed this lawsuit, he provided notice to the New York State Attorney General's Office of his intent to file a lawsuit regarding his New York Civil Rights Law claim.  *See* March 19 Tr. at 40-41.  The jury never had to decide this element of Plaintiff's New York Civil Rights Law claim, however, since the merits of the claim were assessed under the same legal standard as Plaintiff's Section 1981 and New York Human Rights Law equal benefit claims.  Because the jury found for Defendant on the merits of the equal benefit claims, the jury did not have to determine whether or not Plaintiff had provided the requisite notice to the New York State Attorney General's Office.

checked . . . .  Both Plaintiff witness testified to this."  Pl.'s Mem. at 11-12.  In essence, Plaintiff

argues that based on the evidence presented at trial, a reasonable jury should have found that

Defendant intentionally discriminated against him based on his race by checking his shopping

bag after he made his purchase and not checking the shopping bags of non-minority customers.

Plaintiff adds that Defendant's only trial witness, Elia Cardenas, "testified that 'she had or has no

personal knowledge of the August 7th, 2020, and how counsel told her about it.'"  *Id.* at 12.

       In further discussion of the evidence, Plaintiff cites his own testimony regarding the

alleged discriminatory conduct he experienced and an audio recording that he played for the jury,

which he believes captured the incident.  *Id.* at 12-13.  Plaintiff contends that Ms. Cardenas's

testimony did not provide either direct or circumstantial evidence to support the defense.  *Id.* at

13.  He concludes that "[i]n light of the facts as this Court should found [*sic*] them herewith,

Plaintiff has persuaded the Court that defendant's actions were motivated by Plaintiff's race.

Judgment as a matter of law must be granted on the Plaintiff['s] Section 1981 'equal benefits'

claim."  *Id.* at 14.

       Plaintiff's recitation of the trial testimony and exhibits omits the evidence that

significantly called into question the credibility of the accounts offered by Plaintiff, his sister,

and his mother.  As an initial matter, Plaintiff's attack of Ms. Cardenas rings hollow—his

attempt to discredit Ms. Cardenas's testimony by highlighting her lack of personal knowledge of

the incident is not at all persuasive, because Ms. Cardenas repeatedly and candidly

acknowledged during her testimony that she lacked such personal knowledge.  *See*, *e.g.*, March

18 Tr. at 173.  It was clear during the trial that Defendant did not call Ms. Cardenas to testify as a

witness with firsthand knowledge of the incident.  Rather, Defendant called her to authenticate

and explain an exhibit that listed the Stop & Shop employees who were working on August 7,

2020; in particular, Defendant elicited testimony from Ms. Cardenas to identify the employees working in the self-checkout area of the Stop & Shop, where the incident allegedly occurred, at the time of the incident.  *See generally* March 18 Tr. at 118-35.

Ms. Cardenas's testimony that the two employees on duty in the self-checkout area that evening were both male stood in contrast to the testimony of Plaintiff, his sister, and his mother, each of whom testified that the employee who allegedly discriminated against Plaintiff in the self-checkout area was female.  *Compare id.* at 126-28 (Ms. Cardenas's testimony) *with e.g., id.* at 10 (Sapphira Alexander's testimony), 71 (Glyda Alexander's testimony) & ECF No. 146 ("March 17 Tr.") at 25[7] (Plaintiff's testimony).  In addition, as Plaintiff acknowledged during his direct testimony, *see* March 17 Tr. at 26-27, 29-30, and as further brought out during cross-examination of Plaintiff by Defendant's counsel, *see id.* at 54, 55, the audio recording that Plaintiff cites as proof of his claims ends immediately after Plaintiff completed his purchase at Stop & Shop on August 7, 2020.  The recording does not capture the allegedly discriminatory conduct, when Plaintiff claims he was called racial slurs and asked to show the contents of his shopping bag.  *See* Def. Trial Ex. B.  The trial in this case was one in which the outcome was largely determined by the jury's assessment of the witnesses' credibility, specifically, whether they credited the testimony of Plaintiff, his mother, and his sister, or the testimony of Defendant's employee, Ms. Cardenas.  The jury reasonably could have chosen not to credit the testimony of Plaintiff, his sister, and his mother as to what occurred that night and could have instead credited Ms. Cardenas's testimony, based on the Defendant's records, that the employees on duty in the self-checkout area of the Stop & Shop on August 7, 2020 were male, not female.

---

[7] Citations to the "March 17 Tr." are to the page numbers assigned by the Court's ECF system.

From that foundation, the jury also reasonably could have concluded that Plaintiff failed to demonstrate by a preponderance of the evidence that Defendant intentionally and purposefully discriminated against him on the basis of his race.

In his motion papers, Plaintiff puts forward no argument that calls into question the legal support for the jury's verdict. *See Edelman*, 141 F.4th at 41 ("Manifest injustice exists where a jury's verdict is wholly without legal support." (quotation marks omitted)); *Hutchinson*, 2022 WL 1154347, at *3 ("Plaintiff's arguments fail because they do not call into question the legal support for the jury's verdict."). Rather, all Plaintiff does is "assume that the jury should have credited his version of events"; his assertions thus "go to the proper weight afforded to the trial evidence, which is not a proper basis for a Rule 50(b) motion." *Hutchinson*, 2022 WL 1154347, at *3 (quotation marks omitted); *see id.* at *2 ("[I]n deciding any Rule 50 motion, a court must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence."). That the jury "reached a result that Plaintiff feels was erroneous does not render the verdict 'wholly without legal support.'" *Id.* at *3. Accordingly, Plaintiff cannot satisfy the elevated "manifest injustice" standard, and his Rule 50(b) motion must be denied under this standard.

Even if the Court were to excuse Plaintiff's failure to file a Rule 50(a) motion in light of his *pro se* status and consider Plaintiff's Rule 50(b) motion under the legal standard ordinarily applicable to such a motion, the motion would still be denied. Plaintiff has failed to demonstrate that there was a "complete absence of evidence" supporting the jury's verdict such that it could only have resulted from "sheer surmise and conjecture." As set forth above, the jury could reasonably have chosen not to credit the testimony of Plaintiff, his sister, and his mother and could have instead credited Ms. Cardenas's testimony that the only employees on duty in the

self-checkout area of the Stop & Shop on August 7, 2020 were male.  The audio recording that
Plaintiff presented as "proof" of his claims did not capture what purportedly transpired during
the relevant moments, *see* March 17 Tr. at 26-27, and therefore did not serve to corroborate the
testimony of Plaintiff and his family members.  Moreover, Plaintiff and his sister acknowledged
on cross-examination that they never sought to identify the employee who allegedly
discriminated against Plaintiff, even though Plaintiff re-entered the store that same evening and
even though Plaintiff and his sister returned to that Stop & Shop location on two other occasions,
once in October 2020 and once in November 2020.  *See* March 17 Tr. at 57-58, 76-77[8]; March

---

[8] Plaintiff's testimony on this point regarding the evening of August 7, 2020 was as
follows:

> Q.  At that time, when you went back into the store, was the white female
> still at the self-checkout area?
>
> A.  Yes, that's correct.
>
> Q.  Did you take a photograph of her?
>
> A.  No.
>
> Q.  Did you look for her name tag?
>
> A.  It was still turned the opposite way, right.
>
> Q.  Okay.  And you spoke to another individual, and did you ask that
> individual to bring you over to the woman who was in self-checkout?
>
> A. . . . I didn't ask her to bring me over to there, no.

March 17 Tr. at 76-77.  With respect to Plaintiff's return visits to the Stop & Shop location in
October and November 2020, Plaintiff was asked, "[o]n any of those two dates, did you ever take
a photograph of the woman that you contend spoke poorly of you," and he responded "[n]o."  *Id.*
at 57-58.

18 Tr. at 36-37, 39-40, 43-44.[9]  The jury could also reasonably have considered this testimony in

assessing their credibility about the entire alleged sequence of events on August 7, 2020.  For all

of these reasons, there was sufficient evidence to support the jury's verdict as to each of

Plaintiff's equal benefit claims, and Plaintiff's Rule 50(b) motion must be denied under the

ordinary standard for such motions as well.[10]

Plaintiff also includes an argument in his memorandum of law regarding his supposed

entitlement to emotional distress and punitive damages.  Pl.'s Mem. at 16-17.  But Plaintiff

would only be eligible to receive damages if there had been a finding of liability against Stop &

Shop on one or more of Plaintiff's claims.  Because the jury found in favor of Defendant on all

claims, the jury properly did not reach the issue of damages.  And because there is no basis to set

aside the verdict, there is no reason for the Court to consider any arguments with respect to

damages here.

In sum, Plaintiff has failed to establish that he is entitled to judgment as a matter of law.

---

[9] Plaintiff's sister testified that when she and Plaintiff returned to the Stop & Shop store in October and November 2020, they saw the same employee who allegedly had discriminated against Plaintiff on August 7, 2020.  March 18 Tr. at 26.  When Plaintiff's sister was asked whether, when she saw that same female Stop & Shop employee again in October and November 2020, she went "to courtesy and ask to speak to a manager," she responded, "[n]o." *Id.* at 36. She was then asked, "[o]n that day in October or November, did you ever take a photograph of this woman," to which she again responded, "[n]o." *Id.* at 36-37; *see also id.* at 43-44 ("[D]id you ever talk to the managers when you went back those other occasions?  A.  No.  Q.  Did you ever seek to determine what was the name of the particular individual who you claim called your brother an inappropriate term?  . . . A.  Oh, no.").

[10] Because Plaintiff's New York Human Rights Law and New York Civil Rights Law claims are governed by the same legal standard as his Section 1981 equal benefit claim, the Court need not separately address Plaintiff's arguments for judgment as a matter of law with respect to those claims.

**B.    Rule 59(a) Motion for a New Trial**

For a district court to order a new trial pursuant to Rule 59(a), it must conclude that the jury "reached a seriously erroneous result" or that "the verdict is a miscarriage of justice." *Manley*, 337 F.3d at 245 (quotation marks omitted).  A court "should only grant such a motion when the jury's verdict is egregious," and "should rarely disturb a jury's evaluation of a witness's credibility."  *DLC Mgmt. Corp.*, 163 F.3d at 134 (quotation marks omitted).  Here, Plaintiff fails to demonstrate that he satisfies the applicable legal standard, and he is therefore not entitled a new trial.

Plaintiff makes all of his arguments in support of his Rule 59(a) motion in his reply brief. Specifically, he contends that "[f]or the same reasons already discussed with respect to Rule 50(b) motion, the Court should find that the verdict was against the weight of the evidence." Reply Mem. at 5.[11]  As noted in Section II.A, *supra*, however, the outcome of the trial in this case hinged on the jury's credibility determinations with respect to the witnesses presented by both Plaintiff and Defendant.  The Second Circuit has made clear that "[w]here a verdict was based almost entirely on the jury's assessments of credibility, it should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Gonzalez v. Morris*, 824 F. App'x 72, 74 (2d Cir. 2020) (summary order) (quotation marks omitted).  And while the Court is free to weigh the evidence in deciding a Rule 59(a) motion, in doing so, "the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility."  *Mugavero*, 680 F. Supp. 2d at 558-59 (quotation marks omitted). In this case, there is nothing about the jury's assessment of the witnesses' credibility that leads

---

[11] Citations to the "Reply Mem." are to the page numbers assigned by the ECF system.

the Court to conclude that the verdict was egregious, seriously erroneous, or a miscarriage of justice.

Along these same lines, Plaintiff again challenges the testimony of Ms. Cardenas because she had no personal knowledge of the alleged incident on August 7, 2020. *See* Reply Mem. at 6. As previously explained, Ms. Cardenas never denied her lack of personal knowledge and her testimony was elicited for other purposes. The Court sees no basis to disturb the jury's evaluation of the credibility of the witnesses and its decision to credit Ms. Cardenas's testimony over the testimony of Plaintiff and his family members. Nothing about the jury's assessment here renders the verdict seriously erroneous.

Plaintiff reprises his argument that "Defendant Stop & Shop presented no probative evidence from which a reasonable jury could conclude that [Plaintiff] wasn't discriminated against and or treated less differently than other non-minorities through defendant circumstantial evidence or direct evidence." Reply Mem. at 6. But again, it was *Plaintiff's* burden to prove that Defendant discriminated against him by a preponderance of the evidence—Defendant was not obligated to present evidence that Plaintiff was not discriminated against, and Plaintiff's attempt to shift the burden of proof to Defendant must fail. *See Ruggiero*, 928 F.2d at 562.

Plaintiff also points to other alleged errors in support of his motion for a new trial, including that Defendant's counsel "improperly influenced the jury in his opening and during direct examination for dates of discrimination occurrences in October and November 2020 instead of August 7th 2020." Reply Mem. at 5. This mischaracterizes counsel's statements. Defendant's attorney understandably sought to highlight the fact that in October and November 2020, Plaintiff returned to the same Stop & Shop supermarket where the alleged incident occurred, but on those later occasions, even though he supposedly saw the same female Stop &

Shop employee, he never took a photograph of her or otherwise sought to identify her.  *See* March 17 Tr. at 21 ("What is interesting is that Mr. Alexander claims that in October and November of 2020, he went back and saw the exact same female on those occasions, but on a date he does not know, and never took their photograph or ID.").  In fact, when Defendant's counsel cross examined Plaintiff's sister and asked whether "there was only one instance in which Stop & Shop, according to your brother and you, used an improper word towards him," it was Plaintiff's sister who introduced the notion of other instances of discrimination by responding, "[a]ctually, no.  In November and October she was murmuring. . . like taunting words and racial slurs under her breath."  March 18 Tr. at 31-32.  This unexpected answer did prompt follow-up questions from Defendant's counsel.  But even so, during his closing argument to the jury at the conclusion of the trial, Defendant's counsel stated clearly that the case concerned "a singular event" that occurred on "August 7th, 2020 at 9:30."  March 19 Tr. at 4.  Plaintiff's allegation that Defendant's counsel "improperly influenced the jury . . . for dates of discrimination occurrences in October and November 2020" is thus unfounded.  Moreover, the Court instructed the jury multiple times that the statements and arguments of the parties in their capacity as advocates, and the questions asked of the witnesses, are not evidence.  *See*, *e.g.,* March 17 Tr. at 6; March 19 Tr. at 29.  None of these arguments provide a basis to grant a new trial.

Plaintiff's final points are also without merit.  He makes a stray reference to testimony about Stop & Shop's compliance or non-compliance with Covid-19 policies, presumably as a means of attempting to discredit Defendant.  *See* Reply Mem. at 7.  But as the Court noted during the trial, this testimony is entirely irrelevant to Plaintiff's claims.  *See* March 18 Tr. at 171-73.  Furthermore, while Plaintiff asserts that "Defendant ambushes [Plaintiff] through their

witness by pulling out badges on the stand," Reply Mem. at 7, the Court sustained Plaintiff's objection to Defendant's counsel's questioning of Ms. Cardenas about her name badge and instructed the jury "to disregard any testimony about the name tag," March 18 Tr. at 174-75. The Court explained to the jury that "that is not part of the evidence in the case. There's been other testimony about name tags, which you can evaluate as you see fit, but Ms. Cardenas's testimony about name tags, we're going to disregard." *Id.* at 175. The jury is presumed to have followed the Court's instruction, *see, e.g.*, *United States v. Iotova*, No. 23-129-cr, 23-6148-cr, 23-6149-cr, 2024 WL 5198747, at *4 (2d Cir. Dec. 23, 2024) (summary order) ("[T]he law recognizes a strong presumption that juries follow limiting instructions . . . ." (quotation marks omitted)), and accordingly this cannot be a basis to conclude that the jury "reached a seriously erroneous result."

In sum, Plaintiff has failed to establish his entitlement to a new trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment as a matter of law and/or for a new trial (ECF No. 143) is DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a) that an appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438 (1962).

Dated: October 21, 2025
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Opinion and Order has been mailed by Chambers to the *pro se* Plaintiff at his address of record on the docket.